**TORWEST DBC, INC., a Colorado corporation, Plaintiff,**

**v.**

**John W. DICK, Werner C. Heinrichs, William B. Pauls, Canusa Investments (CI) Ltd., a Jersey, Channel Islands corporation, and Barclays Bank of Canada, a Canadian corporation, Defendants.**

**Civ. A. No. 85–M–625.**

United States District Court,
D. Colorado.

Feb. 18, 1986.

Gary T. Cornwell, F. Kelly Smith, Robert Blakey, McGuire, Cornwell & Blakey, Denver, Colo., for plaintiff.

David A. Zisser, O'Connor & Hannan, Denver, Colo., for defendant John W. Dick.

James A. Clark, Bruce D. Pringle, Baker & Hostetler, Denver, Colo., for defendants Werner Heinrichs and Canusa Investments (CI) Ltd.

Charles F. Brega, Roath & Brega, Denver, Colo., for defendant William B. Pauls.

Craig R. Maginness, Sherman & Howard, Denver, Colo., for defendant Barclays Bank of Canada.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The complaint alleges that the defendants John W. Dick, Werner C. Henrichs and William B. Pauls secretly purchased real property and resold it at a substantial profit to Torwest DBC, Inc., (Torwest DBC) a corporation in which they were directors. Torwest DBC invoked this court's jurisdiction by claiming under provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (RICO). The first claim brought under section 1962(d) alleges a conspiracy to violate RICO provisions; the second claim based on section 1962(c) alleges that the defendants conducted the affairs of an enterprise through a pattern of racketeering activity within the meaning of section 1961(1)(B) and (5). The complaint also alleges thirteen other claims for relief based on Colorado law, including Colorado's statutory analogue to RICO. Jurisdiction is alleged under the RICO statute, 18 U.S.C. § 1965, and 28 U.S.C. § 1331.

Now before the court are defendants' motions to dismiss upon the contention that the RICO claims are time-barred and for the failure to state claims for relief under RICO. At oral argument held on November 19, 1985, the parties agreed that the court may proceed under F.R.Civ.P. 56, by accepting the statement of facts contained in the plaintiff's brief filed September 26, 1985 as the factual support for the RICO claims.

In summary, the plaintiffs assert that in 1974, defendants Dick, Heinrichs and Pauls, operating through Vace Securities (Vace), entered into an agreement with Great-West Life Assurance Company (Great-West) for the purpose of acquiring and developing real property. Vace was to find new properties for development, while Great-West's primary role was to finance the ventures. As part of the agreement, a third corporation, Torwest Properties Limited (Torwest) was formed. Vace appointed defendants Dick, Heinrichs and Pauls to the Torwest board of directors, and Great-West appointed three other members.

In 1977, Dick, Heinrichs and Pauls formed Canusa Investments Limited (Canusa) in Jersey, Channel Islands, for the purpose of secretly acquiring an interest in commercial property known as the Denver Business Center (DBC). The purchase was made by Canusa for $5,400,000. The defendants then proposed to the other members on the Torwest board that Torwest purchase the property from Canusa. Acting on the recommendations of Dick, Heinrichs and Pauls, the Torwest board voted in favor of the DBC purchase. Torwest then formed Torwest DBC to acquire and develop the property, and the sale was consummated. It is alleged that the defendants received an immediate secret profit of $1,250,000, plus a potential $6 million additional profit through a participation agreement.

To recover on the section 1962(c) claim, Torwest DBC must show the defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima v. IMREX Company,* — U.S. —, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). For the purposes of these motions, it is assumed that the defendants committed numerous acts of mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, and transportation of money taken by fraud, 18 U.S.C. § 2314. Thus, racketeering activity is assumed.

A "pattern of racketeering activity" as defined in the statute "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter ... and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The principal question left open in the *Sedima* opinion is whether the courts may develop a more complete definition of a pattern of racketeering activity in applying RICO. It is the view of this court that the Supreme Court strongly suggested that this element is an appropriate area for further consideration by the language of footnote 14, as follows:

> As many commentators have pointed out, the definition of "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity." § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a

pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship. . . . So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern. . . ." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.,* at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States,* 420 U.S. 770, 789 [95 S.Ct. 1284, 1295, 43 L.Ed.2d 616] (1975).

*Sedima, supra,* 105 S.Ct. at 3285, n. 14. The Senate report referred to in footnote 14 includes the following language:

> The concept of "pattern" is essential to the operation of the statute. One isolated "racketeering activity" was thought insufficient to trigger the remedies provided under the proposed chapter, largely because the net would be too large and the remedies disproportionate to the gravity of the offense.

S.Rep. No. 617, 91st Cong., 1st Sess. 159 (1969)

Courts should look to the purposes, results, participants, victims and methods of commission to determine whether a pattern of racketeering activity exists. The number of predicate acts, if more than one, is irrelevant. The question is the nature of the conduct under all of the circumstances.

The plaintiff's statement of facts does not show a pattern of racketeering activity.

First, the defendants' conduct had a single purpose—to obtain a secret profit in the sale of one parcel of commercial property. Second, the conduct had a single result—Torwest DBC paid more for the property than it would have paid had the fraud not occurred. Third, there was only one set of participants. Fourth, there is a single victim, Torwest DBC. Fifth, there was one method of commission—an elaborate scheme, that included the formation of Canusa and the secret purchase of DCB. Where there is only one purpose, one result, one set of participants, one victim and one method of commission, there is no continuity and, therefore, no pattern of racketeering activity.

RICO also requires that the predicate acts must be related to the statutorily proscribed conduct. There must be *"continuity plus relationship."* The required relationship will be different, depending upon the prohibited conduct. Under section 1962(a), the predicate acts must be related in the sense that they produce proceeds which are then invested in an enterprise. Under section 1962(b), the predicate acts must be related to the objective of acquiring or maintaining control of an enterprise. Section 1962(c) requires all of the acts to be related to the conduct of the affairs of the enterprise. *See United States v. Elliott,* 571 F.2d 880, 899 n. 23 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).

In *United States v. Zang,* 703 F.2d 1186 (10th Cir.1982), *cert. denied,* 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983), a case decided prior to *Sedima,* the court examined the RICO pattern requirement in the context of a criminal prosecution under section 1962(a). There, the defendants purchased lower tier priced controlled crude oil, fraudulently recertified it as more expensive higher tier oil, and sold it at a substantial profit from December of 1976 through September of 1978. The scheme depended upon the mailing of fraudulent invoices containing tier certifications.

The result in *Zang* is consistent with the continuity requirement of *Sedima.* In *Zang,* the government proved that the defendants altered many invoices, each involving different shipments of oil. Every time oil was sold, the purchaser paid more than the seller was legally entitled to charge under applicable government regulations, and the fraud affected downstream purchasers. There were a series of results attributable to methods that were employed again and again, which was sufficient to satisfy both the continuity and relationship requirements for a pattern of racketeering activity.

Similarly, in *Illinois Department of Revenue v. Phillips,* 771 F.2d 312 (7th Cir. 1985), the state department of revenue sued a retailer under RICO for filing nine fraudulent tax returns over a nine month period. The court held that each mailing could constitute mail fraud and that an adequate pattern was alleged for a violation of section 1962(c). Under Illinois law, retailers are required to pay sales taxes monthly. The fraud had a different result every month, i.e. the defendant used the same methods to defraud the state out of a different sum of money many times over. Thus, while there was a single victim, the retailer conducted his business enterprise through multiple mail frauds in an established pattern.

At oral argument, plaintiff suggested that the DBC sale should not be considered a single transaction because courts previously have held that the racketeering acts must be interrelated. *See, e.g., United States v. Weatherspoon,* 581 F.2d 595, 601 n. 2 (7th Cir.1978). Therefore, argues the plaintiff, the RICO statute would be emasculated since if it is alleged that the acts are separate, a defendant will contend that the acts are not related, and conversely, if a plaintiff contends that the acts are related, a defendant will argue that there must be more than one transaction.

In this court's view there is no dilemma. First, section 1962(c) requires that predicate acts need only be related to the conduct of the affairs of the enterprise, not that they necessarily be closely related to each other. Second, a focus on the issue of

the number of transactions is misleading. The inquiry should be concerned with whether the conduct establishes a reliable sample of traits or other observable features that can be said to constitute a pattern of behavior. This inquiry should be pursued by examining all of the factors suggested by footnote 14 in *Sedima*.

The plaintiff also contended at oral argument that the continuity plus relationship requirement is satisfied in this case because the defendants were general agents of the enterprise. The relationship requirement concerns the nexus between the predicate acts and the proscribed conduct. The relationship of the defendants to the enterprise is not controlling. It is obviously true that the defendants were in a position to undertake additional schemes to defraud the plaintiff. But there is no suggestion in this case that the defendants did so. What is important is the proven pattern of behavior, not the possibility of a future pattern of behavior based upon the positions of the parties.

This court is aware of the decision in *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir.1985). There, a corporation sued two former employees and stockholders, including an ex-president, for allegedly preparing false invoices and submitting them to the corporation after they left its employ. Two mailings were alleged—one by the defendant to the plaintiff containing the invoices, the second a letter from plaintiff's counsel to defendants' counsel. The Fifth Circuit held that the complaint alleged a sufficient pattern of racketeering activity to state a claim under 18 U.S.C. § 1964(c).

At oral argument counsel for Torwest DBC stated that the *Hyatt* court reached the wrong result. This court agrees, but there is no convincing distinction between the position plaintiff would have this court adopt and the *Hyatt* decision. If the continuity requirement can be satisfied by the mere number of acts, or by the agency status of a defendant, then the defendants in *Hyatt* are little different from the defendants here. This court would dismiss

the complaint in *Hyatt* because all that was alleged was a scheme to defraud R.A.G.S. by submitting false invoices claiming money for repairs made to sewing machines. The conduct had a single purpose, result, set of participants, victim, and method of commission. Accordingly, no pattern of behavior cognizable under RICO was alleged. If RICO requires *nothing more* than multiple predicate acts, the simplest mail fraud schemes would be brought within it because multiple mailings are involved in almost all such cases.

Because of the conclusion that the plaintiff has not asserted a sufficient pattern of racketeering activity to support a section 1962(c) claim, it is not necessary to decide whether the plaintiff's allegation that "[t]he activities of Great-West, Torwest and Torwest DBC in the acquisition and development of commercial properties" (Complaint para. 72) constitute a cognizable enterprise. It can be noted, however, that an enterprise requires a showing of an association of persons or entities, not simply a collection of activities. The plaintiff's apparent difficulty in defining the enterprise is not unrelated to its difficulty in alleging a pattern of racketeering activity.

The first claim for relief in the complaint is under the conspiracy section of the RICO statute, section 1962(d), which provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." After a careful review of the accepted statement of facts provided by the plaintiff, it appears that there is no basis for contending that the defendants contemplated fraudulent schemes other than the sale of the DBC. Indeed, all claims in the complaint are based upon the single "SCHEME TO DEFRAUD" described in the complaint on pages 3–11. Accordingly, no facts or inferences support a contention that the defendants conspired to conduct additional activities to harass the plaintiff in a manner which would meet the requirement. Accordingly, no claim for relief is stated under section 1962(d).

Because the first and second claims in the complaint must be dismissed, there is no basis for exercising pendent jurisdiction over the state law claims. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Upon the foregoing, it is

ORDERED, that the defendants' motions for summary judgment under F.R.Civ.P. 56 are granted, and the Clerk shall enter judgment of dismissal of the first and second claims for relief, and it is

FURTHER ORDERED, that the third through fifteenth claims for relief are dismissed without prejudice. No costs are awarded.