**TECHNOLOGY EXCHANGE CORPORATION OF AMERICA, INC., a Colorado corporation, Plaintiff,**

v.

**The GRANT COUNTY STATE BANK, a Kansas banking corporation, Colorado Heritage Ranch, Inc., a Colorado corporation, Max Ramsay, Does 1 through 50, Inclusive, and Roe Participating Banks 1 through 10, Inclusive, Defendants.**

Civ. A. No. 85–K–2188.

United States District Court, D. Colorado.

Oct. 22, 1986.

---

Melvin B. Sabey, Deborah E. Smith, Saunders, Snyder, Ross & Dickson, P.C., Denver, Colo., James Robert Dennis, Dennis, Coscia & Willett, Rancho Santa Fe, Cal., for plaintiff.

Roger P. Thomasch, David A. Klibaner, Mark Wielga, Roath & Brega, P.C., Denver, Colo., Lawrence P. Hartlaub, Granby, Colo., for Grant County State Bank.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

In this action filed under the Securities Exchange Act of 1934 and rule 10b–5 prom-

ulgated thereunder, the Racketeer Influenced and Corrupt Organizations Act, the Colorado and Kansas Securities Act and several common law claims, defendant Grant County State Bank has moved to dismiss all or certain claims in the complaint based on Fed.R.Civ.P. 12(b)(6). Jurisdiction of this twelve-claim complaint is founded upon § 27 (15 U.S.C. § 78aa) and § 10(b) (15 U.S.C. § 78j(b)) of the Securities Exchange Act of 1934, 28 U.S.C. § 1331 and the doctrine of pendent jurisdiction.

Plaintiff Technology Exchange Corp. of America, Inc. is a corporation qualified to do business in the State of Colorado. Defendant Grant County State Bank is a bank chartered to do business and with its principal place of business in Kansas. Defendant Colorado Heritage Ranch, Inc. is a Colorado corporation with its principal place of business in Colorado. Defendant Max Ramsay is a resident of the State of Kansas. Tech's complaint alleges that on February 8, 1980, Defendant GCSB entered into a loan contract with Ranch for the sum of $4,000,000. This loan was secured by parcels of land located in Grand County, Colorado. Ranch obtained the loan with the intent of using the proceeds to develop the Grand County property into a residential area. Tech maintains that GCSB has never funded the entire amount of the loan but, rather, only distributed incremental sums. Moreover, the complaint alleges that without informing Ranch, GCSB was required to obtain funding from other unidentified banks to meet the provisions of the loan agreement.

In September of 1980, Tech alleges that Ramsay, in his capacity as president of Ranch, decided to sell the subject property. The sale was stopped, however, when GCSB and the other participating banks intervened and prevented the sale without any notice to Ranch or Ramsay and absent any circumstances indicating default. Tech further claims that GCSB participated in the control and management of the Ranch residential development project by obtaining real estate consultants to advise Ranch concerning the sale of the property, attempting to sell the property, reviewing proposed expenditures by Ranch with regard to the development of the property and refusing to disburse funds for those expenditures it did not approve, retaining consultants to critique Ranch's management and marketing of said property, threatening to withhold further funding if Ranch failed to comply with its demands and requiring that Ranch submit periodic reports explaining expenditures and marketing strategies.

On May 1, 1983, Tech entered into a contract with Ranch which provided that Tech manage and develop Ranch's Grand County residential project in exchange for payment. The compensation package contained within this service contract involved two stages. During the first stage, Tech was paid a specified monthly sum. Upon reaching the second stage, however, Tech not only received a monthly salary but also was given 4% of Ranch's common stock and a 20% interest in all of Ranch's profits. Stage two commenced when Tech achieved any one of four re-financing objectives specified in stage one. Tech claims that GCSB approved and ratified the terms of this contract.

In making this service contract, Tech claims that Ramsay, with the knowledge and consent of GCSB and the other participating banks, made misleading representations and material omissions of fact regarding the adequacy of funding and the role taken by GCSB and the other banks. More specifically, Tech claims that it was induced by Ranch, with GCSB's ratification, into entering this contract under the belief that it would be freely able to perform its contract with Ranch and be fully paid for such performance. Instead, due to GCSB's control over the development of the project, Tech alleges that it was not fully paid for its services and was hampered in its efforts to perform the contract. Tech's claims for relief allege charges of common law fraud; negligent misrepresentation; breach of contract; money paid; work, labor and services; interference with contractual relations; interference with prospective advan-

tage; federal and state securities fraud; and RICO violations.

## FEDERAL SECURITIES CLAIMS

In GCSB's motion to dismiss the 10(b) and 10b–5 securities claims, GCSB contends that there was no "sale" or "purchase" of a security as required by the Securities Exchange Act. GCSB argues that since stage two of the service contract between Tech and Ranch was never reached, a portion of which included the stock bonus provision, then no sale or purchase of securities ever occurred.

 There is no dispute that the protections incorporated within § 10 of the Securities Exchange Act extend only to purchasers and sellers of securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.1952) cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed 1356 (1952). The words "purchase or sale" and "in connection with" a purchase or sale of securities are to be broadly interpreted. *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 549, 19 L.Ed.2d 564 (1963); *Clark v. United Bank of Denver, N.A.,* 480 F.2d 235 (10th Cir.1973); *Brooks v. Land Drilling Co.,* 564 F.Supp. 1518 (D.Colo.1983). These terms are statutorily defined in the 1934 Act to include any contract to buy or sell. Sections 3(a)(13) and (14) of the 1934 Act, (15 U.S.C. § 78c(a)(13) and (14)). Certainly, the contract between plaintiff and Ranch constituted a transaction involving the purchase or sale of securities.

 Additionally, simply because the transaction affecting the purchase and sale of securities was not fully performed does not mean the alleged violations should go unremedied. *Brooks v. Land Drilling Co.,* 564 F.Supp. 1518 (D.Colo.1983); *Walling v. Beverly Enterprises,* 476 F.2d 393 (9th Cir. 1973). In *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555 (2nd Cir. 1985), the plaintiff alleged that the defendant company knowingly misrepresented its financial condition when it agreed to issue its stock along with other compensation to

plaintiff in return for the plaintiff's services as an employee and for certain of plaintiff's assets. In determining whether the complaint stated a claim under the federal securities laws, the court found that " ... a contract for the issuance or transfer of a security may qualify as a sale under the securities laws even if the contract is never fully performed." *Id.,* 751 F.2d at 559. The court further determined that it was immaterial that defendant's obligation to deliver the stock was conditioned upon the attainment of a given level of sales. *Id.,* 751 F.2d at 559. The court stated that it saw no reason why a contingency attached to a contractual right to acquire stock should remove that right from securities law coverage simply because it increases the risk that plaintiff will not obtain the shares. *Id.,* 751 F.2d at 559, n. 4.

Like *Yoder,* the fact that stage two of this contract was never reached should not preclude Tech from stating a claim for violation of § 10 of the Securities Exchange Act. Section 10 is designed to remedy all situations where fraudulent practices have been used in the connection with the purchase or sale of securities regardless of the actual terms of the purchase or sale. Further, assuming the allegations are true, this case is especially compelling for not allowing a contingency to defeat a federal securities claim because of the liklihood that the reason the contingency was not reached may be due to GCSB's control over the development of the project.

GCSB also contends that regardless of whether there was a purchase or sale of a security, the contract was between Tech and Ranch and, thus, GCSB was not involved in the transaction and cannot be held liable. Tech claims, however, that defendant GCSB is a "controlling person" pursuant to § 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)).

 Section 78t(a) states:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable

jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. This statute is remedial and must be construed liberally. It has been interpreted as requiring only an indirect means of discipline or influence short of actual direction to hold a "controlling person" liable. *Noland v. Gurley*, 566 F.Supp. 210, 220 (D.Colo.1983), citing *Myzel v. Fields*, 386 F.2d 718, 738 (8th Cir.1967) cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 192 L.Ed.2d 1143 (1968).

■ Tech alleges in paragraph 17 of its complaint that GCSB participated in the control and management of Ranch's residential development project by retaining real estate consultants, attempting to sell the property to third-parties, reviewing proposed expenditures and only disbursing loan proceeds for those expenditures it approved, retaining accountants, threatening foreclosure if Ranch did not comply with its demands and requiring expenditure reports. Tech further alleges that defendant GCSB approved and ratified the service contract with full knowledge that Tech was unaware of GCSB's involvement and control of the project. These allegations are sufficient to survive a motion to dismiss. They may be difficult to prove, but such difficulty does not inform a Rule 12(b)(6) motion.

## THE RICO CLAIM

GCSB has moved to dismiss Tech's RICO claim on the grounds that the predicate acts of securities fraud should be dismissed as well. Although I denied the motion to dismiss the securities claim, I dismiss the RICO claim based on Tech's failure to establish a pattern of racketeering.

Stating a cause of action under the RICO Act requires that Tech allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P. R.L. v. IMREX Co., Inc.*, — U.S. ——, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985);

*Plains Resources, Inc. v. John R. Gable*, 782 F.2d 883, 887 (10th Cir. Jan. 24, 1986). Although the RICO Act is to be read broadly, the Supreme Court indicated in *Sedima* that those concerned with the Act's potentially vast and expansive application should focus on the requirement of a pattern of racketeering activity. *Sedima*, 105 S.Ct. at 3287; *Professional Assets Management, Inc. v. Penn Square Bank*, 616 F.Supp. 1418, 1421 (W.D.Okla.1985); *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831–34 (N.D.Ill.1985); *Kamin v. Colorado National Bank of Denver*, No. 85–F–1814, Slip Op. at 4 (D.Colo. February 18, 1986).

■ Section 1961(5) of the RICO Act requires at least two predicate acts of racketeering activity before a pattern exists. In *Sedima*, the Court stated that even two acts may be insufficient in establishing a pattern of racketeering activity. *Sedima*, 105 S.Ct. at 3285, n. 14. In fact, the occurrence of several predicate acts may fail to establish a pattern of racketeering activity when those acts are directed towards a single fraudulent scheme. *Professional Assets Management*, 616 F.Supp. at 1421; *Northern Trust Bank/O'Hare*, 615 F.Supp. at 832; *Torwest DBC, Inc. v. Dick*, 628 F.Supp. 163 (D.Colo.1986); *Kamin*, Slip Op. at 4. The significant factors are continuity and relationship which join to produce a pattern. *Sedima*, 105 S.Ct. at 3285, n. 14. Thus, the predicate acts must evince continuity as well as relatedness to constitute a pattern.

The relationship requirement is satisfied when the predicate acts are sufficiently related to the statutorily proscribed conduct. *Torwest DBC, Inc.*, 628 F.Supp. at 166. Section 1962(c), which I presume is the section under which Tech is maintaining its claim, requires the predicate acts to be related to the conduct of the affairs of the enterprise. Continuity of racketeering activity, however, implies that the predicate acts must have occurred in different criminal episodes. *Allington v. Carpenter*, 619 F.Supp. 474, 478 (C.D.Cal.1985). In determining whether continuity exists, "[c]ourts

should look to the purposes, results, participants, victims and methods of commission" *Torwest DBC, Inc.,* 628 F.Supp. at 165.

■ In paragraph 64 of Tech's complaint, it claims it was fraudulently induced into entering a contract involving the purchase and sale of securities through a series of material misrepresentations and omissions made by Ranch and its officers and ratified by GCSB. These misrepresentations and omissions consisted of a failure on the part of Ranch to reveal that it was controlled by GCSB and other participating banks, that GCSB and the participating banks were unable and unwilling to further fund the loan, that GCSB and the participating banks did not intend to honor the terms of Tech's service contract and that GCSB was dependent upon funding from the participating banks. Clearly, these misrepresentations and omissions are sufficiently related to the conduct of the affairs of GCSB and Ranch in that these acts were made in an effort to further the development of Ranch's real estate project. Thus, the relationship requirement is satisfied.

■ With regard to continuity, Tech's complaint alleges several predicate acts, but the sole purpose of these acts was to induce plaintiff to enter into the service contract. The subsequent result was that plaintiff entered into a contract and incurred damages that it claims it would have avoided had it been informed of all of the material circumstances. The alleged violations only involved one set of participants and one victim. The sole method of commission utilized was to conceal certain alleged material information from Tech. Thus, when there is but one purpose, one result, one set of participants, one victim and one method of commission, no continuity is established and no pattern of racketeering exists. See *Torwest,* 628 F.Supp. at 166.

## PENDENT JURISDICTION

Jurisdiction over the claims of violation of the Securities Exchange Act of 1934 is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. Tech seeks pendent jurisdiction over its related state law claims. The power to exercise pendent jurisdiction exists when the state claims derive from a common nucleus of operative fact with the federal claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Here, such nucleus is present. The exercise of such power, however, is discretionary. *Id.* I decline to exercise this power in the instant case.

■ As stated previously by this court, assertion of these state claims tends to expand improperly the scope and remedies provided under federal securities laws. *Kerby v. Commodity Resources Incorporated,* 395 F.Supp. 786, 790 (D.Colo.1975); *Anastasi v. American Petroleum, Inc.,* No. 82–K–841, Slip Op. at 2 (D.Colo.Dec. 24, 1984) [available on WESTLAW, DCTU database]. Further, this court has consistently declined to exercise pendent jurisdiction over state claims in federal securities cases when the assertion of these parallel but differing claims would confuse the jury. *Kerby,* 395 F.Supp. at 790; *Anastasi,* Slip Op. at 2. Tech has attached to its complaint a demand for a jury trial. Confusion will likely result if the jury is forced to sift through all of the instructions on liability and measure of damages applying to the nine different state law claims and the federal securities claim. In fact, the court in *Kerby* stated that jury confusion alone is a sufficient reason for denying pendent jurisdiction. *Kerby,* 395 F.Supp. at 790. Finally, state claims may fairly be dismissed when it is apparent that "... the state issues substantially predominate, whether in terms of proof, of scope of the issues raised, or of the comprehensiveness of the remedy sought ..." *Gibbs,* 383 U.S. at 726–7, 86 S.Ct. at 1139. Clearly, Tech's state law claims dominate this suit not only in scope of issues raised but also in the comprehensiveness of the remedies sought. Thus, resolution is properly left to the state tribunals. Accordingly, all claims asserted under the statutes and common law of Colorado and Kansas as presented in the first

through eighth, tenth and eleventh causes of action are dismissed.

IT IS THEREFORE ORDERED:

1) Defendant GCSB's Motion to Dismiss the federal securities claims is denied;

2) Defendant GCSB's Motion to Dismiss the RICO claim is granted;

3) All claims asserted under the common law and statutes of the State of Colorado and Kansas are dismissed for lack of subject matter jurisdiction.