H.J. INC., a Minnesota corporation, Kirk Dahl, Larry Krugen and Mary Krugen, individually and d/b/a Photo Images, Susan Davis, Robert Neal, Isaac H. Ward, Richard L. Anderson, Thomas J. Mott, and all others similarly situated, Plaintiffs,

v.

NORTHWESTERN BELL TELEPHONE COMPANY, a subsidiary of U.S. West, A.B.C. individually and D.E.F. as corporations, and other unnamed Co-conspirators, Defendants.

Civ. No. 4–86–546.

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 18, 1987.

909

Mark Reinhardt, Susan Bedor, Reinhardt & Anderson, and John Cochrane, Cochrane & Bresnahan, St. Paul, Minn., for plaintiffs.

John D. French, John F. Beukema, James L. Volling, Joseph H. Otterstetter, Faegre & Benson, and Stephen T. Refsell, General Atty., Minneapolis, Minn., for defendants.

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion to reconsider. Plaintiffs' motion will be denied.

## FACTS

This is a class action arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Plaintiffs also bring a state law claim pursuant to the Court's pendent jurisdiction, alleging acts of bribery in contravention of Minn.Stat. § 609.42, subd. 1(1) and (2) and the common law of bribery. By order dated November 21, 1986, the Court granted defendant Northwestern Bell Telephone Co.'s (Northwestern Bell) motion to dismiss the complaint in its entirety, 648 F.Supp. 419. The facts of the case are set forth in the Court's prior order and will not be extensively reprised here. In brief, plaintiffs allege that Northwestern Bell, by and through its corporate agents, initiated a scheme designed to illegally influence various members of the Minnesota Public Utilities Commission (MPUC), the regulatory body which sets rates which Northwestern Bell may charge for the goods and services it provides. Plaintiffs allege that from early 1980 and through the present Northwestern Bell has offered benefits, rewards and consideration to certain MPUC commissioners, including bribes, offers of employment and various gifts, free meals, and emoluments, with intent to influence these commissioners in the performance of their duties. In its November 21 memorandum and order, the Court found that plaintiffs had failed to allege a "pattern" of racketeering within the meaning of the RICO statute, and accordingly granted defendant's motion to dismiss the RICO counts of plaintiffs' amended complaint. The Court dismissed plaintiffs' pendent state law claim without prejudice. Plaintiffs now bring this motion for reconsideration.

## DISCUSSION

### A. Pattern of Racketeering

It is by now well established that in order to establish a civil RICO cause of action plaintiffs must prove the existence of four elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *See Sedima, S.P.*

*R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted); *Simon v. Fribourg,* 650 F.Supp. 319–323 (D.Minn.1986). The RICO act defines "pattern of racketeering activity" in the following terms:

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5). In *Sedima* the Supreme Court pointed out that while at least two acts of racketeering are necessary to form a pattern, two acts may not be sufficient. *Sedima,* 105 S.Ct. at 3285 n. 14. Rather, it is the factor of continuity plus relationship which combines to produce a pattern. *Sedima,* 105 S.Ct. at 3285 n. 14, *citing* S.Rep. No. 91–617, p. 158 (1969). In passing, the *Sedima* majority noted that the failure of Congress or the courts to develop a meaningful concept of "pattern" has contributed to the expansive potential of RICO's application, and suggested that a stricter interpretation of the pattern requirement might be the key to arresting civil RICO's explosive growth. *Sedima,* 105 S.Ct. at 3287. Subsequently, the lower courts have accepted the Supreme Court's invitation to flesh out the pattern element, albeit with varying results. *See, e.g., Frankart Distributors, Inc. v. RMR Advertising, Inc.,* 632 F.Supp. 1198, 1200 (S.D.N.Y.1986) (numerous courts have struggled with establishing a definition of pattern of racketeering activity in light of the *Sedima* Court's reasoning and the clear objectives of the RICO statute); *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 785 F.2d 1274, 1280 n. 7 (5th Cir.1986) (Fifth Circuit directed its lower courts to consider more rigorous interpretation of the pattern requirement).

In the language of one of the more trusted sources for the definition of English words, a "pattern" is defined as: "an arrangement or composition that suggests or reveals a design; a configuration...." WEBSTER'S NEW COLLEGIATE DICTIONARY (C & G Merriam Co. 1961), *cited in United States v. Freshie Co.,* 639 F.Supp. 442, 444 (E.D.Pa.1986). The Omnibus Crime Control Act of 1970 provides that "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e), *cited in Sedima,* 105 S.Ct. at 3285 n. 14. The courts have suggested that to compose a pattern "the acts complained of must be related to and similar in purpose, and must be part of an ongoing series of acts, rather than separate incidents in a series of sporadic activities." *Louisiana Power and Light Co. v. United Gas Pipe Line Co.,* 642 F.Supp. 781, 808 (E.D.La.1986), *citing Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986). In their search for a meaningful interpretation of "pattern" the courts have focused on the dual requirements of "relationship" and "continuity" highlighted by the *Sedima* majority.

### 1. Relationship

■ Relationship generally has proved the less problematic of the prongs enunciated by *Sedima.* It has been stated that to be related, the predicate acts of a RICO claim must involve common perpetrators, common methods of commission, common victims, and a common motive or purpose. *Medallion TV Enterprises, Inc. v. SelecTV of California, Inc.,* 627 F.Supp. 1290, 1296 (C.D.Cal.1986); *Graham v. Slaughter,* 624 F.Supp. 222, 225 (N.D.Ill.1985); *Allington v. Carpenter,* 619 F.Supp. 474, 478 (C.D. Cal.1985). Relationship requires that the acts of racketeering be related to the operation of the enterprise, that is, sufficiently related to the statutorily proscribed conduct. *Papai v. Cremosnik,* 635 F.Supp. 1402, 1407–08 (N.D.Ill.1986); *Technology Exchange Corp. of America, Inc. v. Grant County State Bank,* 646 F.Supp. 179, 183 (D.Colo.1986). As stated by the United

States Court of Appeals for the Seventh Circuit in *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986), "[r]elationship implies that the predicate acts were committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Morgan*, 804 F.2d at 975.

In this case, it is clear that plaintiffs have alleged a "relationship" among and between the predicate acts of racketeering enumerated in their amended complaint. Plaintiffs have identified common perpetrators, Northwestern Bell and certain of its officers and agents; common victims, Northwestern Bell's ratepayers; and a common motive or purpose, improper influence of MPUC commissioners through bribes, gifts and assorted emoluments. Plaintiffs have alleged that the acts of racketeering are related to the operation of the enterprise, and that each of these acts was directed toward a similar end. In this case, as in most reported RICO decisions, plaintiffs have little difficulty surmounting the "relationship" barrier.

## 2. Continuity

As the Court noted in its November 21 order, continuity presents a more problematic analysis, both on the facts of this case and in general. At a minimum, continuity means that plaintiffs must allege "more than sporadic or isolated activity." *Graham*, 624 F.Supp. at 225. The term pattern "connotes a multiplicity of events: ... The continuity inherent in the term presumes repeated criminal activity, not merely repeated acts to carry out the same criminal activity." *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831 (N.D.Ill.1985). In this respect, ongoing criminal activity or at least a threat of ongoing criminal activity is a key indicium of continuity. *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325, 1337 (N.D.Ill.1986). One court has stated that in determining whether continuity exists, courts should look to "the purposes, results, participants, victims and methods of commission." *Technology*

*Exchange*, 646 F.Supp. at 183–84. Quite obviously, these are identical to the factors to be assessed in gauging "relatedness." The "inherent contradiction" which exists between the dual requirements of relatedness and continuity is perhaps resolved by recognizing that relatedness requires proof that the predicate acts are "sufficiently connected," while, in contrast, continuity requires proof that the predicate acts are "sufficiently differentiated." *Freshie*, 639 F.Supp. at 445; *Allington*, 619 F.Supp. at 478. To prove relatedness, plaintiffs must demonstrate that the predicate acts evince common perpetrators, victims, methods, motive or purpose. To prove continuity, plaintiffs must demonstrate that the racketeering acts are "sufficiently unconnected in time or substance to warrant consideration as separate criminal episodes." *Allington*, 619 F.Supp. at 478. As stated in *Freshie:*

> [A]n inherent tension exists between the dual requirements of relatedness and continuity. Viewed on a continuum, these two requirements must reach some equitable balance to form a "pattern." ... [T]he acts must be "sufficiently connected, but also sufficiently differentiated." ... [A]s the acts become more related, the same transactions lose some of their separateness. On the other hand, if a series of predicate acts satisfied the requirement of "separate criminal episodes," then those acts might well not meet the relatedness requirement, being too disjointed (different subject matter) and too remote (in time).

*Freshie*, 639 F.Supp. at 445 (citations omitted).

The United States Court of Appeals for the Eighth Circuit has had an opportunity to address the continuity requirement in four post-*Sedima* decisions. In *Alexander Grant and Co. v. Tiffany Industries, Inc.*, 770 F.2d 717 (8th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986), the Court stated in dictum that plaintiff's allegations of twenty-six acts of mail fraud and four acts of wire fraud were sufficient to demonstrate a pattern of racketeering activity. The Court declared:

The number and nature of acts, together with allegations demonstrating their similar purposes, results, participants, victims, and methods of commission, bespeak a sufficient "continuity plus relationship" to satisfy the Supreme Court's concerns in *Sedima* that RICO not be extended to reach sporadic activity.

*Alexander Grant*, 770 F.2d at 718 n. 1.

In *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986) the court found that plaintiff's allegations of several related acts of mail and wire fraud in furtherance of a scheme to convert gas from plaintiff's pipeline did not rise to the level of a "pattern" of racketeering activity. The Court declared that proof of a single fraudulent scheme, implemented by several fraudulent acts, does not bespeak "continuity" in the absence of proof that the defendants "had ever done these activities in the past ... [or] that they were engaged in other criminal activities elsewhere," *Superior Oil*, 785 F.2d at 257. The court concluded:

> The actions of [defendants] comprised one continuing scheme to convert gas from [plaintiff's] pipeline.... On the facts of this case, we agree with the court's conclusion in *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 832 (D.C.Ill.1985), that "[i]t is difficult to see how the threat of continuing activity stressed in the Senate Report could be established by a single criminal episode. * * * It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Superior Oil*, 785 F.2d at 257 (footnote omitted).

In *Holmberg v. Morrisette*, 800 F.2d 205 (8th Cir.1986), plaintiff offered proof of several acts of wire or mail fraud related to a single scheme to draw letters of credit. The Eighth Circuit found that, because defendants' fraudulent acts were undertaken as part of a "common purpose or scheme," there was no showing of continuity, absent proof that the defendants "had engaged in like activities in the past or that they were engaged in other criminal activities." *Holmberg*, 800 F.2d at 210. In the absence of allegations of like wrongful activity in the past or other wrongful activity elsewhere, plaintiff's RICO claim was found to be fatally defective.

The most recent Eighth Circuit teaching on the subject is *Deviries v. Prudential-Bache Securities, Inc.*, 805 F.2d 326 (8th Cir.1986). In *Deviries* plaintiff alleged that the defendant had made misrepresentations to secure his securities brokerage account and then "churned" the account over a six-year period. The Eighth Circuit found that each of the predicate acts alleged were committed in furtherance of a single "scheme," and that accordingly, plaintiff had "failed to allege the continuity necessary to establish a 'pattern' of racketeering activity." *Deviries*, 805 F.2d at 329. Following *Superior Oil* and *Holmberg*, the *Deviries* court found plaintiff's allegations of a "pattern" insufficient absent an "allegation that [defendants] had engaged in similar endeavors in the past or that they were engaged in other criminal activities." *Deviries*, 805 F.2d at 329.

As a number of courts and commentators have noted, the Eighth Circuit's approach to the pattern requirement lies at one end of the spectrum of post-*Sedima* RICO "pattern" jurisprudence. What is required to allege a pattern of racketeering activity in the Eighth Circuit is proof of multiple criminal schemes or episodes, that is, that defendants have engaged in similar criminal activities in the past or are engaged in other criminal activities elsewhere. Critics of this approach point out that it appears to run contrary to the *Sedima* court's directive that "RICO is to 'be liberally construed to effectuate its remedial purposes,'" *Sedima*, 105 S.Ct. at 3286, *quoting* Pub.L. 91–452, § 904(a), 84 Stat. 947, and that "the imposition of a 'multi-scheme' requirement ... could arbitrarily exclude large-scale frauds from [RICO's] scope simply because the actors' overall goal—while perhaps no less ambitious or ultimately harmful than a series of short-range illegal plots—happens to be a monolithic one."

*McLendon v. the Continental Group, Inc.,* No. 83–1340, slip op. at 8 (D.N.J. July 31, 1986) [Available on WESTLAW, DCTU database]; *Morgan,* 804 F.2d at 975. Advocates of the Eighth Circuit's restrictive approach contend that "[t]his construction of the pattern requirement is the only construction that effectuates Congress' intent to avoid imposition of RICO liability where there have been only isolated or sporadic criminal acts." *Frankart,* 632 F.Supp. at 1201. *See, e.g., Simon,* at 323 (no pattern where plaintiff does not allege that defendants concocted a similar scheme in any other year or that they were otherwise involved in any criminal activity); *Krediet-bank, N.V. v. Joyce Morris, Inc.,* CIVIL No. 84–1903 slip op. (D.N.J. Oct. 11, 1985) (a series of fraudulent mailings did not constitute a pattern of racketeering activity where mailings were all aimed at implementing a single fraudulent scheme); *Medical Emergency Service Associates S.C. v. Foulke,* 633 F.Supp. 156 (N.D.Ill. 1986) (multiple mailings in furtherance of a single criminal episode are insufficient to establish a pattern of racketeering activity); *Dunham v. Independence Bank of Chicago,* 629 F.Supp. 983 (N.D.Ill.1986) (no pattern where each of the predicate acts occurred in the execution of a single, though repeated, substantive misrepresentation); *Professional Assets Management, Inc. v. Penn Square Bank, N.A.,* 616 F.Supp. 1418 (W.D.Okla.1985) (no pattern where claim arises from one engagement to perform one bank audit); *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6 (W.D.Pa.1981) (multiple bribes received by councilman at a political fundraiser did not constitute a pattern); *Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mutual Insurance Co.,* 641 F.Supp. 297 (E.D.Pa. 1986) (one isolated fraudulent scheme, even if containing more than one fraudulent act, is not enough to constitute a pattern); *Richardson Greenshields of Canada Ltd. v. Patel,* 643 F.Supp. 672 (S.D.N.Y.1986)

(no pattern where predicate acts were part of a single, unified activity); *Exeter Towers Associates v. Bowditch,* 604 F.Supp. 1547 (D.Mass.1985) (two acts of mail fraud in connection with the purchase of a single mortgage does not constitute a pattern).

At the other extreme are those cases, most notably the decision of the United States Court of Appeals for the Fifth Circuit in *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985), holding that a showing of two related predicate acts is sufficient. *See also Trak Microcomputer Corp. v. Wearne Bros.,* 628 F.Supp. 1089 (N.D.Ill.1985); *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167 (S.D.N.Y. 1985); *Systems Research, Inc. v. Random, Inc.,* 614 F.Supp. 494 (N.D.Ill.1985). Critics of this approach point out that it will invariably "sweep into federal courts, under RICO, the great majority of actions for fraud in commercial transactions." *Exeter,* 604 F.Supp. at 1554.[1]

A number of courts, most notably the United States Court of Appeals for the Eleventh Circuit in *Bank of America National Trust & Savings Association v. Touche Ross & Co.,* 782 F.2d 966 (11th Cir.1986), have attempted to steer a middle ground, holding that a single fraudulent scheme which encompasses various predicate acts over a significant period of time satisfies the pattern requirement. *See Freshie,* 639 F.Supp. at 444. Under this approach, it is not necessary to allege multiple criminal schemes, provided that plaintiff alleges an "open-ended scheme" over an extended period of time evincing criminal activity which is continuous in nature rather than isolated. *B.J. Skin & Nail Care, Inc. v. International Cosmetic Exchange, Inc.,* 641 F.Supp. 563, 566 (D.Conn. 1986). In *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986), the Seventh Circuit appeared to adopt this intermediate approach, holding that "[i]n order to be sufficiently continuous to constitute a pat-

---

**1.** The *R.A.G.S.* opinion is unpersuasive for another reason. In the subsequently decided *Smoky Greenhaw* opinion the Fifth Circuit seemed to suggest that the nature of the pattern requirement remained an open question, without reference to *R.A.G.S. See Smoky Greenhaw,* 785 F.2d at 1280 n. 7.

tern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.*, "transactions 'somewhat separated in time and place.' ...." *Morgan*, 804 F.2d at 975. Advocates of the intermediate approach, dubbed the "multiple episodes plus ongoing course of conduct" standard, *Gidwitz v. Stirco, Inc.*, 646 F.Supp. 825, 829 (N.D.Ill.1986), contend that it deflects "garden variety" commercial fraud cases while sweeping into the RICO net those cases which are large in scale albeit monolithic. *See, e.g., Temporaries, Inc. v. Maryland National Bank*, 638 F.Supp. 118 (D.Md.1986); *Louisiana Power*, 642 F.Supp. at 808; *Freshie*, 639 F.Supp. at 445.

■ Plaintiffs urge the Court to adopt the intermediate approach above-referenced and to find that because the amended complaint includes allegations of various predicate acts committed over an extended, identifiable period of time, the continuity aspect of the pattern requirement is met, notwithstanding that these predicate acts transpired in connection with a single "scheme." As stated by the Court in its prior order, were the Court writing on a clean slate these arguments might well be persuasive. The Eighth Circuit has thrice held, however, that continuity requires proof of multiple criminal episodes. *Superior Oil*, 785 F.2d at 257; *Holmberg*, 800 F.2d at 210; *Deviries*, 805 F.2d at 329. This unbroken line of authority the Court is not free to disregard. Here, plaintiffs' amended complaint includes no allegations of separate transactions—merely separate predicate acts—and no allegations that these predicate acts have independent harmful significance. Each of the predicate acts alleged by plaintiffs was committed in furtherance of a single scheme to influence MPUC commissioners to the detriment of Northwestern Bell's ratepayers. The Court is obliged to turn to the lan-

guage of *Superior Oil, Holmberg*, and *Deviries:* plaintiffs simply have not alleged that defendants have engaged in like activities in the past or that they are engaged in other criminal activities elsewhere.

The approach adopted by the Eighth Circuit is designed to give meaning to Congress' intended rejection of RICO liability predicated upon isolated or sporadic criminal acts. *Allington*, 619 F.Supp. at 478, *citing* 116 Cong.Rec. 35193 (statement of Rep. Poff) (RICO not aimed at the isolated offender). Moreover, the requirement that plaintiffs in a civil RICO action demonstrate that the predicate acts occurred in different criminal episodes is consistent with the connotation of multiple events implicit in the term pattern. *Medallion TV*, 627 F.Supp. at 1296. A "pattern" requires more than one single criminal episode carved into distinct predicate acts. *Commercial Agropequaria Menichetti Fuente S.A.C.I. v. Heather Trading Corp.*, 85 CIV-IL 3240, slip op. at 8 (S.D.N.Y. Mar. 27, 1986) [Available on WESTLAW, DCTU database], *cited at Richardson*, 643 F.Supp. at 674.[2] Although plaintiffs have alleged numerous predicate acts over an extended period of time, it is clear that these acts were part and parcel of a unified, monolithic criminal scheme. The predicate acts alleged by plaintiffs are not "sufficiently unconnected in time and substance to warrant consideration as separate criminal episodes." *Medallion TV*, 627 F.Supp. at 1297.

Plaintiffs urge the Court to depart from the multiple criminal schemes test adopted by the Eighth Circuit and to focus instead on factors such as the duration of the alleged racketeering activity and the number of victims. A number of courts and commentators have noted that an interpretation of "pattern" which turns on fine distinctions between single or multiple "episodes" or "schemes" is ill-suited to accomplishment of RICO's central purpose, the

---

**2.** As stated by Justice Powell in his *Sedima* dissent, "[t]he definition of pattern may ... logically be interpreted as meaning that the presence of the predicate acts is only the beginning:

something more is required for a 'pattern' to be proved." *Sedima*, 105 S.Ct. at 3289 (Powell, J. dissenting).

eradication of "traditional mobster and racketeer activity and comparable ongoing structured criminal enterprises." ABA Ad Hoc Civil task Force 71, *quoted in Sedima*, 105 S.Ct. at 3289 (Powell, J., dissenting). These courts have focused analysis on several relevant factors, including:

**(1) Duration**—One indicium of "continuity" is the duration of the alleged criminal activity. To the extent plaintiff alleges criminal activity which is ongoing over an identified period of time, the possibilities are enhanced that defendants are indeed engaged in traditional mobster activity or comparable ongoing structured criminal enterprises. Conversely, where the predicate acts are of a finite and limited duration, directed at a specific goal, the likelihood increases that ordinary commercial fraud is involved.

**(2) Threat of Ongoing Criminal Activity**—Hand-in-hand with duration, which focuses on past events, is the threat of ongoing criminal activity, which focuses on the likelihood that defendant's criminal activities will continue into the future. Absent allegations that defendants' scheme has the potential to continue indefinitely a strong likelihood exists that the wrongs alleged are isolated, not systematic.

**(3) Multiple Victims**—One characteristic of traditional mobster activity or comparable ongoing structured criminal enterprises is the presence of many victims. "The repetition of an act taken against a single victim ... suggests no expansion, no ongoing design, no continuity, such as was the target of Congress" in enacting RICO. *Satellite Financial Planning Corp. v. First National Bank of Wilmington*, 646 F.Supp. 118, 120 (D.Del.1986); *Kriedtbank*, slip op. at 9.

**(4) Independent Harmful Significance**—Some courts have looked to the independent harmful significance of the predicate acts alleged by plaintiffs as an indicium of continuity. A predicate act has independent harmful significance if, standing alone, it brings about the injury complained of. A predicate act lacks independent harmful significance if it brings about inju-

ry only in conjunction with other predicate acts.

**(5) Methods of Commission**—One factor frequently cited by the courts is the methods of commission employed by the defendants. This factor is perhaps less useful than the others, in that it is well-accepted that the mere fact that defendants have employed more than one fraudulent method does not establish a pattern.

**(6) Regular Part of Defendants' Business**—One court has suggested that "RICO's purposes are best served by also requiring that ... a reasonable inference can be made that these episodes were not an aberration in the way a defendant conducted his business. Rather, the pattern made up of multiple episodes must be a regular part of the way a defendant does business and in that sense, ongoing." *Papai*, 635 F.Supp. at 1412.

The above-referenced factors have been highlighted by some courts as having relevance to the pattern inquiry. The courts have noted that these factors are not exhaustive and that all factors need not be proven in each case. The pattern question must inevitably be decided on a case-by-case basis. *Ghouth*, 642 F.Supp. at 1337. The intent of this analysis is to "flesh out the identifying characteristics of the [term] 'episode,' using the concept of 'continuity' as a guidepost." *Ghouth*, 642 F.Supp. at 1339.

Even assuming that these factors have relevance, the Court would still be constrained to find that plaintiffs have not alleged a pattern of racketeering activity. Plaintiffs have alleged criminal activity of long duration. Whether plaintiffs have alleged the threat of continuing criminal activity is a closer question, particularly in view of the review by the MPUC of its past actions. Plaintiffs have alleged the presence of multiple victims, assuming that the body of Northwestern Bell ratepayers is not one corporate victim, but has not shown independent harmful significance, since it is the aggregate of predicate acts which produced their injuries. Plaintiffs have alleged various methods of commis-

sion. It cannot be said, however, that the alleged "pattern" of predicate acts is a "regular part of the way" defendants conduct their business. On balance, the Court finds that, applying the enumerated factors, plaintiffs' allegations do not fit the RICO paradigm. Of course, in the Eighth Circuit the governing standard is the multiple criminal episodes test of *Superior Oil, Holmberg,* and *Deviries.* Applying this test, the Court finds that plaintiffs have not alleged a pattern of racketeering activity. Accordingly, plaintiffs' motion for reconsideration of the Court's RICO ruling is denied.

### 3. Enterprise—Person

■ Plaintiffs' Count II arises under RICO, 18 U.S.C. § 1962(a). For purposes of their section 1962(a) claim, plaintiffs allege that Northwestern Bell is both a "person" within the meaning of 18 U.S.C. § 1961(3) and an "enterprise" within the meaning of 18 U.S.C. § 1961(4). In its November 21 order the Court noted that the Eighth Circuit has ruled that for purposes of a claim arising under section 1962(c) the RICO enterprise must be distinct from the RICO person. *See Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982), *on rehearing,* 710 F.2d 1361 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). With this in view, the Court stated that in a section 1962(a) action as in a section 1962(c) action plaintiffs must allege and prove a RICO "enterprise" separate and distinct from the RICO "person."

A number of courts have found that the person and enterprise need not be distinct in a section 1962(a) action. *See, e.g., B.F. Hirsch, Inc. v. Enright Refining Co.,* 751 F.2d 628 (3d Cir.1984); *Haroco, Inc. v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984); *Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393 (9th Cir. 1986). Other courts have ruled that the distinction pertains in a section 1962(a) action. *United States v. Computer Sciences Corp.,* 689 F.2d 1181 (4th Cir.1982); *Rush v. Oppenheimer & Co.,* 628 F.Supp. 1188, 1197 (S.D.N.Y.1985). The Court continues

to be of the view that the RICO person and enterprise must be distinct for purposes of a section 1962(a) claim. In addition to the reasons cited in the Court's November 21 order, the Court notes the following:

(1) In the absence of "very explicit statutory language," the courts are not inclined to accept the proposition that a civil RICO defendant could participate with itself in the illicit use or investment of income derived from a pattern of racketeering activity. *Computer Sciences Corp.,* 689 F.2d at 1183.

(2) Because civil RICO was intended to provide a remedy against the infiltrator of legitimate business, and not against the infiltrated enterprise, a separate enterprise-person requirement is appropriate in a 1962(a) action as in a 1962(c) action. *Rush,* 628 F.Supp. at 1197.

(3) Perhaps most significantly, the construction of section 1962(a) urged by plaintiffs would fly in the face of ongoing efforts by Congress and the courts to curtail the expansive reach of civil RICO.

For these reasons, plaintiffs' motion for reconsideration of the Court's 1962(a) statements is denied.

### 4. Filed Rate Doctrine

In its November 21 order the Court found that the federal "filed rate" doctrine precludes plaintiffs' cause of action. Plaintiffs urge the Court to reconsider its position. Plaintiffs have not, however, cited any new authority or arguments in support of its motion for reconsideration. Accordingly, plaintiffs' motion will be denied.

Based on the foregoing, and upon review of all files, records and proceedings herein,

IT IS ORDERED that plaintiffs' motion for reconsideration is in all respects denied.