**Albert M. GARBADE, Jr., on behalf of himself and all other stockholders of Great Divide Mining and Milling Corporation, Plaintiff-Appellant,**

v.

**GREAT DIVIDE MINING AND MILLING CORPORATION, a Colorado corporation, and Milton M. Levin, Defendants-Appellees.**

No. 86–2544.

United States Court of Appeals, Tenth Circuit.

Oct. 15, 1987.

Rehearing Denied Dec. 23, 1987.

G. Robert Blakey of McGuire, Cornwell & Blakey, P.C. (F. Kelly Smith, with him on brief), Denver, Colo. for plaintiff-appellant.

John R. Henderson of Vranesh and Raisch, Boulder, Colo. for defendants-appellees.

Before SEYMOUR, SETH and BALDOCK, Circuit Judges.

SETH, Circuit Judge.

The defendant Great Divide Mining and Milling Corporation, a Colorado corporation, held several mining claims. It was organized by plaintiff's father who loaned it money from time to time. The defendant Levin later became the majority stockholder and he also loaned money to Great Divide beginning in the 1960s. He may have accepted shares of stock as payment for some of his loans. In 1976 Great Divide leased mining claims to Noranda Exploration for annual payments. This was apparently the first source of income for Great Divide for a long time. Mr. Garbade, Sr. and defendant Levin, then the Vice President, both wanted this to be applied in payment of their loans made to the company. Shortly thereafter Mr. Garbade, Sr. died leaving Mr. Levin as the principal officer, majority stockholder and a director.

Thereafter as the lease payments were received by the company defendant Levin would apply the funds to repay his loans and intended to continue until he was paid in full with interest. He later negotiated an additional lease of corporate claims with a Mr. Baumgartner which generated more income to Great Divide, which he then applied to the same purpose.

The applications of corporate funds were made secretly and without the knowledge or concurrence of other stockholders. It is this secret withdrawal of corporate income which the plaintiff asserts was illegal and constituted the fraud upon which the RICO and pendent state fraud claims were based.

The trial court dismissed the corporate defendant, Great Divide, entered summary judgment for defendant Levin, and dismissed the state claims, 645 F.Supp. 808. The court concluded that there was asserted nothing to constitute a "pattern of racketeering activity" by defendant Levin, 18 U.S.C. § 1961(5); that there was no § 1962(a) violation arising from the withdrawal of funds from the corporation; and that under § 1962(c) and § 1962(a) in these circumstances the corporation would not be both an "enterprise" and a "person." The plaintiff has appealed.

■ The appellant alleged that the acts of defendant Levin violated 18 U.S.C. § 1962(a). This section is concerned with the *use of funds* derived from a "pattern of racketeering activity" to acquire interests in, or invest in, or to operate legitimate enterprises. The complaint was directed to asserted fraudulent withdrawal of funds from the corporation and not to investments in the concern. There were no facts to support an assertion that the funds loaned to the corporation were from a source described in § 1962(a) nor used for the prohibited purposes.

■ The complaint further alleges that the corporate defendant, Great Divide, violated 18 U.S.C. § 1962(c). The trial court dismissed the corporation on the ground that it could not in these circumstances be both an "enterprise" and a "person" within the purposes and wording of the section. We must agree. Section 1962(c) makes it unlawful for a "person" to enter the activities of an "enterprise" using racketeering activities. References are to "employed by" and "associated with." The section does not relate to corporate or enterprise liability. *Schofield v. First Commodity Corp.*, 793 F.2d 28 (1st Cir.); *Haroco, Inc. v. Amer. Nat'l Bank & Trust Co.*, 747 F.2d 384 (7th Cir.); *United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir.).

There is no indication whatever that the corporation was in any way benefited by the alleged acts of any defendant. The existence of such benefits have provided, in several cases, an exception to this conclusion and to impose corporate liability under § 1962(a).

■ As to the claim of corporate liability under § 1962(a), the trial court dismissed the corporate defendant. Again we agree. The "person" and "enterprise" combination liability can only occur when the corporation actually is the direct beneficiary of the pattern of racketeering activity, *Haroco, Inc. v. Amer. Nat'l Bank & Trust Co.*, 747 F.2d 384 (7th Cir.); also, where it is to disgorge illegally obtained proceeds, *Masi*

v. *Ford City Bank & Trust Co.*, 779 F.2d 397 (7th Cir.); or where the statute seeks to reach the proceeds of illegal activities, *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir.).

In the case before us the defendant corporation received no illegally obtained funds as contemplated by the statute. Its dismissal by the trial court was proper.

This brings us to the § 1962(c) claim against the defendant Levin and more particularly to the issue of whether there was shown to be "a pattern of racketeering activity." In our view, when *Torwest DBC, Inc. v. Dick*, 810 F.2d 925 (10th Cir.), is applied to these facts and circumstances the conclusion must be reached that the statutory requirements for such a § 1962(c) claim were not met.

*Torwest* decided what was *not* a pattern of racketeering activity, as did *Condict v. Condict*, 815 F.2d 579 (10th Cir.). We will do the same and again not attempt to construct an affirmative definition of what would constitute such a pattern. Thus as was said in *Torwest:*

> "In reaching this conclusion, we decline to go beyond the facts before us to formulate a bright-line test in the abstract."

■ As the description of the facts recited, the defendant Levin made the several secret withdrawals in an attempt to have the loans he had made to the company repaid out of company funds which he could control as a first priority. This method of securing repayment was to continue until the loan, with interest, had been repaid and nothing more. Thus there existed a clear and definite single objective for his acts.

This would seem to fit well into the holding in *Torwest* as to the scheme there concerned:

> "[T]o achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished."

The Court in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, referred to the purpose of the statute as one to meet "the threat of continuing activity" and not "sporadic activity." The elements required are described in *Torwest* and in its analysis of *Sedima*. In *Torwest* and here there is nothing from which there could be inferred a continuing scheme. The continuity element is absent here.

We have examined the arguments of appellant in regard to the Baumgartner lease on a portion of the corporate property which was negotiated and signed by the defendant Levin. He was then apparently the only corporate officer. We cannot conclude that this lease, nor the circumstances surrounding it, add any additional elements to the case relative to the issues raised and need no separate discussion.

We thus agree with the action of the trial court in granting summary judgment for the defendant Levin and in the dismissal of the corporate defendant.

The judgment of the trial court is AFFIRMED.