**Emile M. BABST, III, et al.**

v.

**MORGAN KEEGAN & COMPANY.**

Civ. A. No. 86–5614.

United States District Court,
E.D. Louisiana.

June 10, 1988.

Monroe & Lemann, Benjamin R. Slater, Jr., Michael R. O'Keefe, III, Mark E. Van Horn, New Orleans, La., for plaintiffs.

John C. Speer, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, Tenn., Gibson Ochsner & Adkins, Tracey Noblitt, John Huffaker, Amarillo, Tex., and McGlinchey, Stafford, Mintz, Cellini & Lang, John Gregory Odom, Stephen W. Rider, New Orleans, La., for Perryton Feeders, Inc., Century Credit Corp. and Virl LaMunyon.

Phelps, Dunbar, Marks, Claverie & Sims, Jack M. Weiss, Trial Atty., Esmond Phelps, II, John P. Sneed, New Orleans, La., for Morgan Keegan & Co., Inc. and Allen J. Catalanotto.

Polack, Rosenberg, Rittenberg & Endom, Charles T. Curtis, Jr., New Orleans, La., for Rodney Hughes.

## OPINION

ARCENEAUX, District Judge.

Currently before the Court is the motion of Morgan Keegan & Company, Inc., (Morgan Keegan) and Allen Catalanotto to dismiss the plaintiffs' RICO claims, and the motion of Perryton Feeders, Inc. (Perryton), Century Credit Corporation (Century), and Virl LaMunyon to dismiss all of the plaintiffs' claims against them. Below the Court discusses the merit of the motions.

FACTS:

The plaintiffs have sued the defendants under the Racketeering Influenced and Corrupt Organizations Act (RICO) and the federal securities laws for losses they allegedly sustained as a result of their investment in a cattle feeder investment program. According to the plaintiffs, in December of 1985, Allen Catalanotto, in his capacity as a vice-president of Morgan Keegan, solicited the plaintiffs to invest in a plan under which cattle would be purchased at the close of the year and would be sold at a break-even price in the following year. The effect of the transactions would be to defer for tax purposes until 1986, income earned in 1985. The plan required the plaintiffs to enter into contracts for the care and feeding of the cattle during the period between their purchase and their sale. In a meeting with the plaintiffs on December 23, 1985, Rodney Hughes of Agri–Capital Management, Inc. (Agri–Capital) allegedly made material misrepresentations as to the experience of persons involved in the feeding program and the availability of financing for the venture. The plaintiffs entered into an arrangement in which Agri–Capital would supervise and operate the cattle feeding program in exchange for a "consulting fee", as explained in a private offering memorandum prepared by Agri–Capital. (Doc. No. 13, Exhibit No. 15.) Hughes also allegedly required the plaintiffs to sign loan and security agreements with Century and its controlling shareholder, Virl LaMunyon.

The plaintiffs have alleged that Hughes, Agri–Capital, LaMunyon., Century and Perryton "conspired to defraud the plaintiffs by buying substantially more grain than was actually necessary to feed the cattle." In addition, the defendants allegedly sold the cattle "at higher prices than reported to plaintiffs and the advantage of the higher prices was given to cattle sales for the benefit of said defendants."

MOTIONS TO DISMISS RICO CLAIMS:

### A. Pattern of Racketeering Activity

█ Morgan Keegan and Catalanotto first argue that the plaintiffs' RICO claims should be dismissed for failure to adequately plead a "pattern of racketeering activity." Morgan Keegan and Catalanotto point out that the plaintiffs have only alleged their involvement in three separate predicate acts, one of which was committed in December of 1985.

18 U.S.C. § 1961(5) provides as follows: A pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within 10 years (excluding any period of imprisonment) after the commission of prior act of racketeering activity.

In *Sedima S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court explained that RICO "requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." However, in *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir.1985), the Court of Appeals for the Fifth Circuit adopted a broad definition of "pattern", finding that two related predicate acts of mail fraud could satisfy the pattern requirement. In *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 426 (5th Cir.1987), another panel of the Fifth Circuit urged that the *R.A.G.S.* decision be overturned *en banc*. The court recognized that the precedent set in *R.A.G.S.* must be con-

sidered binding until overruled *en banc*. However, the court strongly urged that a stricter test be imposed under the pattern requirement. Focusing on the legislative history of RICO, the court stated that a series of acts which are simply "preparatory to a discrete accomplishment" cannot be considered a "pattern of racketeering activity." *Id.*

In the present case, because this Court remains restrained by *R.A.G.S.*, the plaintiffs have satisfied the "pattern" requirement despite the minimal involvement of Morgan Keegan and Catalanotto.[1]

### B. Criminal Intent Required in Civil RICO Cases

In their second argument, Morgan Keegan and Catalanotto point out that the plaintiffs have failed to allege that they acted with criminal intent.[2] In their complaint, the plaintiffs alleged that each of the defendants acted with "either the intent to defraud or willful and reckless disregard for the plaintiffs' interests or with scienter." (Complaint p. 32.) However, in the RICO case statement, the plaintiffs stated with greater particularity the alleged misconduct of Morgan Keegan and Catalanotto. In describing the state of mind of these defendants, the plaintiffs alleged that they failed to exercise the appropriate standard of care under the circumstances: "if Catalanotto had exercised the fiduciary duties he owed to plaintiffs, he would have discovered (the falsity of certain statements he had made and the fact of a conspiracy among Hughes, Agri-Capital, LaMunyon, Century and Perryton)." (RICO case statement pp. 19, 20, 21.)

---

1. The defendants have not raised the question of whether the enterprises alleged by the plaintiffs functioned "as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). *See also Manax v. McNamara*, 842 F.2d 808, 810–12 (5th Cir.1988) (affirming dismissal based upon lack of continuity); *Montesano*, 818 F.2d at 427 (RICO suit dismissed because "enterprise" lacked continuity); *Beck v. Manufacturer's Hanover Trust Co.*, 820 F.2d 46, 51 (2nd Cir.1987) (enterprise with single, short-lived goal is not sufficiently continuing); *Newman v. Rothschild*, 677 F.Supp. 146 (S.D.N.Y.1987) (2–year stock commission churning scheme not "continuous" under RICO.) The requirement of a threat of continuing criminal activity would appear not to be limited to "association-in-fact" enterprises. *See Mastercraft Industries, Inc. v. Breining*, 664 F.Supp. 859, 861 (S.D.N.Y.1987). Because this matter has not been addressed by the parties, the court abstains from ruling on the issue *sua sponte*.

2. The predicate acts listed in the RICO case statement include securities fraud, wire fraud, and mail fraud.

A necessary ingredient of every successful RICO claim is an element of criminal activity. In this case, the plaintiffs rely upon 18 U.S.C. § 1961(1)(D), which defines "racketeering activity" to include: "any offense involving ... fraud in the sale of securities ... punishable under law of the United States." It is clear that civil RICO requires that the defendant's state of mind be the same as that required in a criminal prosecution. *See Armco, Indus. Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475, 485 (5th Cir.1986) (defendant could not be held liable as aider and abettor of mail fraud in civil action absent showing of criminal intent); *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984) (plaintiff must allege intent to defraud for RICO mail fraud); *Levine v. Merrill–Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391, 1395–96 (S.D.N.Y.1986) ("in order to charge Merrill–Lynch with a RICO violation, plaintiffs would have to plead facts that would give rise to *criminal* liability on its part for Scott's acts."); *Frota v. Prudential–Bache Securities, Inc.,* 639 F.Supp. 1186, 1192 (S.D.N.Y.1986) (RICO securities violations must be criminal); *Kronfeld v. First Jersey Nat. Bank,* 638 F.Supp. 1454, 1471 (D.N.J.1986) (RICO securities violations must be willful).

The Fifth Circuit has found that civil liability may be imposed under the securities laws if the defendant knows of the falsity of the information, acts in reckless disregard of its falsity, or acts with intent to deceive. *See First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1314 (5th Cir.1977). However, Morgan Keegan and Catalanotto argue that one may not be convicted for violations of the securities laws unless the defendants intended to commit acts prohibited by the securities laws. *See United States v. Dixon,* 536 F.2d 1388, 1397 (2nd Cir.1976) (act in violation of securities laws is done willfully "if done intentionally and deliberately and if it is not the result of innocent mistake, negligence or inadvertence.") In *United States*

*v. Boyer,* 694 F.2d 58, 60 (3rd Cir.1982), the court upheld a jury charge given in a criminal securities case which stated that intent to deceive may be found from a material misstatement of fact made with reckless disregard of the facts. The court reasoned as follows:

[T]here is no reason to suppose that in enacting criminal statutes prohibiting mail fraud or securities fraud the Congress intended that the substantive element of the offense—the scienter—should be different than from civil liability for fraud. We conclude, therefore, that inclusion in the change of a reference to reckless disregard of the facts was not improper.

*See also United States v. Frick,* 588 F.2d 531, 536 (5th Cir.) *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 385 (1979) (reckless indifference for the truth suffices for conviction under the mail fraud statute); *Louisiana Power & Light v. United Gas Pipe Line,* 642 F.Supp. 781, 803 (E.D. La.1986) (" 'knowing intent to defraud' may be found when a defendant deliberately proceeds with reckless indifference for the truth, making representations that are baseless, and shutting his eyes to their probable falsity").

Fed.R.Civ.P. 9(b) provides that, "malice, intent, knowledge and other condition of mind of a person may be averred generally." The meager facts pleaded by the plaintiffs are minimally adequate to survive the current motion to dismiss since the court cannot say that reasonable jurors could not find the defendants' conduct to have been done in reckless disregard for the truth. Thus, the defendants' motion must be denied insofar as it is based upon failure of the plaintiffs to plead intent.[3]

### C. *Separate Identity of Enterprise and Defendant*

In both motions to dismiss, the defendants assert that the plaintiffs have failed to state a claim for relief under RICO because

---

**3.** Counsel for the plaintiffs should analyze the defendants' actions in light of the egregious standard of conduct required for a conviction, in order to determine whether the claims can be maintained in good faith. The Court has given plaintiffs the benefit of the doubt in the foregoing analysis, but reminds plaintiffs of the standards imposed by Rule 11.

the plaintiffs have failed to allege the existence of an enterprise separate from the persons to be held liable. The plaintiffs' RICO claims are based upon 18 U.S.C. § 1962(a) and (c). Subsection (a) provides, in pertinent part, as follows:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

■ Section 1962(c) provides a private remedy for a different form of RICO activity:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Almost without exception, the courts have held that RICO claims under Section 1962(c) require that the RICO enterprise be separate and distinct from the persons to be held liable. *Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122, 122 (5th Cir. 1986); *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2nd Cir. 1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Hirsch v. Enright Ref. Co.,* 751 F.2d 628, 633 (3rd Cir. 1984); *Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 400 (7th Cir.1984), *aff'd.,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984); *Bennett v. Berg,* 685 F.2d 1053, 1061 (8th Cir.1982), *aff'd. in part and rev'd. in part,* 710 F.2d 1361 (8th Cir. 1983), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). *But see United States v. Hartley,* 678 F.2d 961 (11th Cir. 1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983) (no distinction required). Dismissal is appropriate whether the person sought to be held liable is alleged to be the enterprise by itself or is alleged to be part of an "association in fact." *See Entre Computer Centers v. F.M.G. of Kansas City, Inc.,* 819 F.2d 1279, 1287 (4th Cir.1987) (corporation cannot combine with other entities to form an enterprise when it is the person whose behavior RICO is designed to punish). Focusing upon the language of subsection (c), which makes liable a person "employed by or associated with" the enterprise, the courts have concluded that an enterprise "was meant to refer to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit, and failing that, to punish." *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982) *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Haroco,* 747 F.2d at 400.

The plaintiffs in the present case have identified the liable "persons" and the "enterprises", under Section 1962(c), as follows:

1. Allan Catalanotto is employed by Morgan Keegan. Catalanotto is the person liable and Morgan Keegan is the enterprise.

2. Rodney Hughes and James Young were employed by or agents for Agri–Capital. Hughes and Young are the persons liable and Agri–Capital is the enterprise.

3. Virl LaMunyon was employed by both Perryton Feeders and Century Credit. Virl LaMunyon. is the person liable and Perryton Feeders and Century Credit are the enterprise.

RICO case statement, p. 36.

■ The Court finds that the plaintiffs have successfully alleged the existence of enterprises which are separate from the defendants under subsection (c). The claims under subsection (a), however, pose greater difficulty. The plaintiffs have conceded that the enterprises named in their subsection (a) claim are identical to the defendants named in the same claim. (Plaintiff's memo in opposition, p. 6).

There is a split of opinion among the courts as to whether the enterprise and the liable person must be separate in a claim under Section 1962(a). The Seventh Circuit Court of Appeals in *Haroco* and *Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397, 401 (7th Cir.1985), has held that the separate identity requirement of subsection (c) does not apply to claims under subsection (a):

> As we parse subsection (a), a "person" such as a corporation-enterprise acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principal within the meaning of 18 U.S.C. § 2, and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce. Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a) therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering.

*Haroco*, 747 F.2d at 402. *See also Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212, 213 (10th Cir.1987) (person and enterprise may be identical when enterprise is actually direct beneficiary of pattern of racketeering activity, where enterprise is to disgorge illegally obtained proceeds, or when statutes seek to reach the proceeds of illegal activities); *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1361 (3rd Cir. 1987) (enterprise may be held liable); *Schreiber Distributing Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1397 (9th Cir.1986) (adopting *Haroco* and *Masi*); *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 31 (1st Cir.1986) (following *Haroco*); *A Pocono Country Place, Inc. v. Peterson*, 675 F.Supp. 968,

974 (M.D.Pa.1987); *Vietnam Veterans of America, Inc. v. Guerdon Indus.*, 644 F.Supp. 951, 956 (D.Del.1986).

A minority of courts, however, have required that the liable person be separate from the enterprise under subsection (a) as well as under subsection (c). *Computer Services Corp.*, 689 F.2d at 1190; *H.J., Inc. v. Northwestern Bell Telephone Co.*, 653 F.Supp. 908, 916 (D.Minn.) *aff'd.*, 829 F.2d 648 (8th Cir.1987). *See also Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188 (S.D.N.Y.), *reversed on other grounds*, 779 F.2d 885 (2nd Cir.1985) ("The fact that these two subsections use exactly the same terms for each act in the criminal episode further supports a belief that such a compromise between competing goals cannot be superimposed on different subsections of the same statutory section.") These decisions are based upon three policies: (1) a defendant cannot participate with itself in the illicit use or investment of income derived from a pattern of racketeering activity; (2) civil RICO was intended as a remedy against the infiltrator of legitimate business, and not against the infiltrator business; and (3) Congress and the courts are attempting to curtail "the expansive reach of civil RICO." *H.J., Inc.*, 653 F.Supp. at 916.

This Court agrees with the majority and holds that an enterprise may also be the liable person under Section 1962(a). In so holding, the Court recognizes that "the language of each section contemplates a different role the enterprise may play in a variety of corrupt schemes." *Yellow Bus Lines, Inc. v. Local Union 639*, 839 F.2d 782, 790 (D.C.Cir.1988).

The defendants argue that, even if (as this Court has held) an enterprise may be held liable under Section 1962(a), each alleged enterprise in the present case was merely a "passive instrument," as the term was used in *Haroco*, 747 F.2d at 402, and therefore cannot be liable. The difficulty in resolving this argument arises from the failure of the court in *Haroco* to define what it meant by a "passive instrument." This Court concludes that an enterprise is not a "passive instrument" when it directly

or indirectly receives benefits from the racketeering activity which are used in the operation of the enterprise. *See Garbade*, 831 F.2d at 213; *Schreiber*, 806 F.2d at 1398; *Haroco*, 747 F.2d at 402. *See also Petro–Tech, Inc.*, 824 F.2d at 1361 ("so long as the enterprise does in fact benefit from the racketeering activity challenged there is no reason why . . . an injured third party may not recover from the enterprise"). *But see D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967 (7th Cir.1988) (§ 1962(a) was not designed to punish an enterprise which is "an unwitting conduit of its employees' RICO violations."). Thus, it is unnecessary in order to impose liability upon the enterprise under this subsection that the enterprise be an active participant in the racketeering activity in the sense that the enterprise is uniformly corrupt or has knowingly implemented a corporate policy of engaging in acts of racketeering. Because the plaintiffs in the present case have alleged that each enterprise received and used funds derived from racketeering activities, the plaintiffs have stated a claim under Section 1962(a). Accordingly,

IT IS ORDERED that the defendant's motion to dismiss the plaintiffs' RICO claims is DENIED.

## MOTION TO DISMISS SECURITIES LAW CLAIMS

Perryton, Century and LaMunyon also seek the dismissal of Count 8 of the plaintiffs' complaint on the ground that Sections 4(2) and 5 of the Securities Act of 1933 do not provide the plaintiff with a private right of action. The plaintiffs have not opposed this contention of the defendants. An action for damages for violation of the registration requirements must be brought under Section 12 of the Securities Act. *In re North American Acceptance Corp. Securities Cases*, 513 F.Supp. 608, 618 (N.D. Ga.1981). Accordingly,

IT IS ORDERED that the plaintiffs' claims are dismissed insofar as they seek to assert a private right of action under Sections 4(2) and 5 of the Securities Act of 1933.

LaMunyon, Perryton, and Century (the LaMunyon group) have also moved to dismiss the plaintiffs' securities law claims on the following grounds: (1) the LaMunyon group were not "sellers" of securities; (2) they did not make any misrepresentation of material fact; (3) their alleged involvement in the scheme occurred after the plaintiffs invested in the cattle feeder program; and (4) no plaintiff is alleged to have relied on a misrepresentation or omission of the LaMunyon group.

The plaintiffs admit that the LaMunyon group "did not make any representations at all to the plaintiffs." Memorandum in opposition, p. 15. Their complaint, however, is based upon the defendants' failure to affirmatively disclose material facts to the plaintiffs. The obligation of disclosure belongs to a seller of securities. Therefore, whether the LaMunyon group may be held primarily liable for violations of the securities laws depends upon whether they were "sellers" of securities.

Section 12(2) of the Securities Act of 1933 creates a private remedy for a purchaser of securities against one who sold him the securities by means of a prospectus or oral communication that includes an untrue statement of material fact or omits to state a material fact necessary to make the statements made not misleading. *Junker v. Crory*, 650 F.2d 1349, 1359 (5th Cir.1981). To recover under § 12(2), the plaintiff must prove that the defendant, as a seller of a security, misrepresented or failed to state material facts to the plaintiff in connection with the sale. *Id.* The plaintiff must show that he had no knowledge of the untruth or omission, but need not establish reliance or scienter on behalf of the defendant.

In the Fifth Circuit, one may be held liable as a seller of securities, even without privity, if his participation in the buy/sell transaction "is a substantial factor in causing the transaction to take place." *Pharo v. Smith*, 621 F.2d 656, 667 (5th Cir.1980).

Century's alleged involvement in the "sale" of securities consisted of providing financing for the purchase of the cattle and grain. Perryton's involvement allegedly

consisted of the maintenance and feeding of the cattle. The plaintiffs allege that LaMunyon, Century and Perryton were actually alter egos of one another.

While the provision of financing and maintenance of cattle may have been necessary to the working of the cattle feeder program, the facts alleged by the plaintiffs cannot support a finding that the actions of the LaMunyon group were a substantial factor in inducing the sale of securities in the present case. Moreover, the plaintiffs do not dispute in their memorandum that the LaMunyon group had no significant dealings with the plaintiffs until after the plaintiffs had invested in the cattle feeder program. *See Kogan v. National Bank of North America,* 402 F.Supp. 359, 361 (E.D. N.Y.1975) (fraud must have been perpetrated prior to or contemporaneous with, purchase or sale). Accordingly,

IT IS ORDERED that the plaintiffs' claims against Virl LaMunyon, Century Credit, and Perryton Feeders under the Securities Act of 1933 and the Securities Exchange Act of 1934 are DISMISSED insofar as they seek to hold those defendants directly liable for their own actions.

The plaintiffs also seek to hold the LaMunyon group derivatively, or secondarily, liable for the actions of Agri–Capital and its employee, Rodney Hughes. The plaintiffs have rather conclusorily alleged that the LaMunyon group was a member of a conspiracy with Agri–Capital and Hughes to defraud the plaintiffs and that the LaMunyon group was a "controlling person" under the securities acts. One who conspires to violate the securities laws may be held liable for the actions of his co-conspirators which are committed in the course of, and in furtherance of, the conspiracy. *See generally Ruder, Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, in Pari Delicto, Indemnification, and Contribution,* 120 U.Pa.L.Rev. 597, 638–41 (1970) (discussion of joint liability under securities laws for concerted action). In addition, one who has the power to direct the management and policies of a person held liable under the securities laws may also be held liable as a controlling person. 15 U.S.C. §§ 77o, 78t; *Hill York Corp. v. American International Franchises, Inc.,* 448 F.2d 680, 694 (5th Cir.1971). Therefore, the plaintiffs have sufficiently stated claims against the LaMunyon group for secondary liability to withstand the present motion. The Court emphasizes, however, that its ruling is limited to the context of the current motion under Fed.R.Civ.P. 12(b)(6), and mere allegations will not suffice to support these claims should the defendants advance theories supported by authority and facts in the context of motions for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (party who bears burden of proof at trial must come forward with affirmative evidence to withstand motion for summary judgment). Accordingly,

IT IS ORDERED that the motion of Virl LaMunyon, Century Credit and Perryton Feeders to dismiss the plaintiffs' claims under the securities acts is DENIED insofar as the plaintiffs have alleged that the defendants are liable as conspirators and controlling persons.

Finally, the defendants ask that the plaintiffs' claims under the Louisiana Unfair Trade Practices Act be dismissed. The plaintiffs do not oppose the defendants' request, and the Fifth Circuit has recently held the Act inapplicable to securities fraud cases. *See Stephenson v. Paine Webber, Jackson & Curtis, Inc.,* 839 F.2d 1095, 1101 (5th Cir.1988). Accordingly,

IT IS ORDERED that the plaintiffs' claims under the Louisiana Unfair Trade Practices Act are dismissed.