## FIRST NATIONAL BANK OF LOUISVILLE

v.

**Loretta LUSTIG, et al.**

**Civ. A. Nos. 87–5488, 88–1682 and 89–202.**

United States District Court, E.D. Louisiana.

Dec. 7, 1989.

Stone, Pigman, Walther, Wittmann & Hutchinson, William E. Brown, T.A., Barry W. Ashe, New Orleans, La., Wolff Ardis, Patrick M. Ardis, R. Glenn Taylor, Daniel K. Evans, Elizabeth A. McNeill, Memphis, Tenn., Donald Ellis & Associates, Michael T. Byne, Atlanta, Ga., White & Morse, William S. Boyd, III, Gulfport, Miss., for plaintiff First Nat. Bank of Louisville.

Gordon, Arata, McCollam, Stuart & Duplantis, Nathalie M. Walker, Willard H. Henson, Glenda M. Barkate, New Orleans, La., for First Financial of La. Sav. & Loan Ass'n.

Eugene R. Preaus, Mark B. Meyers, Lawrence Ozenberger, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Fidelity & Deposit Co. of Md.

Baldwin & Haspel, William E. Wright, Judy L. Burnthorn, Gary J. Giepert, Suzanne H. Terrell, New Orleans, La., for Pelican Homestead & Sav. Ass'n.

Archie B. Creech, Frank G. DeSalvo, New Orleans, La., for Robert F. Farmigoni.

Hulse, Nelson and Wanek, Joseph G. Gallagher, Jr., T.A., New Orleans, Luke Dove, Jackson, Miss., for Foil–Wyatt–McKewen and E. Bowden Wyatt.

Clarence F. Favret, Jr., Clarence F. Favret, III, New Orleans, La., for L. C. LeBlanc.

Simon, Peragine, Smith & Redrearn, H. Bruce Shreves, Christopher M. Guidroz, J. Thomas Hamrick, Jr., New Orleans, La., Ott & Purdy, Ltd., Robert C. Williamson, Jr., Jackson, Miss., for Benchmark Const. Corp. and David Marsh.

Oesteicher, Whalen & Hackett, Ralph S. Whalen, Jr., New Orleans, for Lee Larson Elmore, Odyssey One, Inc. and Odyssey Two, Inc.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert B. Bieck, Jr., Thomas K. Potter, III, New Orleans, La., for A. C. Lewis, III, Alex Lewis and Succession of Patricia Ann Voorhies Lewis.

Deutsch, Kerrigan & Stiles, Matt J. Farley, T.A., Duris L. Holmes, New Orleans, La., for Aetna Cas. & Sur. Co. and Federal Ins. Co.

Vaughan, Messina & Hellman, Earl N. Vaughan, New Orleans, La., Thomas, Price, Alston, Jones & Davis, Barry S. Zirulnik, Dale F. Schwindaman, Jr., Charles R. Davis, Elizabeth L. DeCoux, Jackson, Miss., for John G. Gray and Dale S. Gray.

Daniel J. Gentz, Marietta, Ga., for Mini Storage Const. Co. and Transtor American Corp.

Richard Stacy, Scottsdale, Ariz., pro se.

Kevin L. DeWitt, Louisville, Ky., pro se.

Lee Larson Elmore, Jackson, Miss., pro se.

Loretta Lustig, Gretna, La., pro se.

Daniel J. Gentz, Marietta, Ga., pro se.

Leroy Roell, Jackson, Miss., pro se.

Christopher J. Hegarty, Novato, Cal., pro se.

## MEMORANDUM OPINION AND ORDER

LIVAUDAIS, District Judge.

Pelican Homestead & Savings Association, successor by merger of First Financial of Louisiana Savings and Loan Association (hereafter "First Financial"), has previously filed a motion under Fed.R.Civ.P. 12(b) to dismiss the RICO count in the complaint, Count XXXI. The motion raises a legal question not yet addressed by this circuit,

*viz.*, whether a corporate defendant may be held liable in a RICO civil suit under the doctrine of *respondeat superior.* We hold that it may not be and grant the motion, although our ruling does not rest on that basis alone.

Count XXXI of the complaint at ¶ 475–478 asserts against First Financial and others causes of action allegedly arising out of violations of all four substantive sections of RICO, 18 U.S.C. § 1962(a), (b), (c) and (d). These claims, as they relate to First Financial, concern four of eight purportedly fraudulent loans made by plaintiff FNBL in four states. (A fifth allegedly fraudulent loan involving First Financial, for a housing project to be built in Baton Rouge, caused no loss to FNBL.) More particularly, the complaint states: (1) that First Financial made a $480,000 loan to the Odyssey I Shopping Center project in Jackson, Mississippi; (2) that this loan was secured in part by an assignment of developer's fees purportedly due from FNBL to Leroy Roell and Larson Elmore, for the Odyssey II Shopping Center project, also in Jackson, Mississippi; (3) that, First Financial's erstwhile vice president Robert Farmigoni, without First Financial's knowledge or authorization, issued on March 19, 1985 a fraudulent permanent commitment letter for funding a mini warehouse project at Buckhead, Georgia; and (4) that First Financial, through Farmigoni, issued and breached a March 19, 1985 permanent loan commitment letter for a mini warehouse project on Lapalco Boulevard in Jefferson Parish.

According to the revised RICO case statement filed by plaintiff FNBL on July 21, 1988, First Financial's wrongdoing in these transactions assertedly consist in (1) vicarious liability, apparently under the doctrine of *respondeat superior,* for the acts of Farmigoni, and also (2) direct liability for the issuance of the commitment letter for permanent financing for the Lapalco mini warehouse project. *See* Revised RICO Case Statement, R.D. 47 (88–1682), at 11–12. Nevertheless, the RICO case statement only identifies two predicate acts in which First Financial was a direct participant: (1) a mailing by Kevin Dewitt,

FNBL's former loan officer, of a letter on December 12, 1985 to Farmigoni at First Financial; this letter misrepresented (a) that FNBL had already committed to fund the Odyssey II project (b) that $400,000 of the $600,000 in developer's fees due from FNBL on Odyssey II would be assigned to First Financial if First Financial's $400,000 loan to Odyssey I was still outstanding when the Odyssey II loan was funded, RICO case statement at 24, predicate act number 5; and (2) the mailing of a First Financial commitment letter, through Farmigoni, to developer Loretta Lustig, for permanent funding for the Lapalco mini warehouse project, which letter First Financial subsequently refused to honor. *Id.* at 28, predicate act number 11. The only other predicate act that even breathes mention of First Financial is predicate act number 12, which alleges mail fraud on the part of Farmigoni expressly unbeknownst to First Financial. *Id.* at 28–29. Moreover, the aforementioned three predicate acts, *viz.*, numbers 5, 11, and 12, are the only acts identified by the RICO case statement as involving Farmigoni himself as a direct participant.

The instant motion filed by First Financial under Rule 12(b)(6) seeks: (1) dismissal of the § 1962(b) and (c) claims for failure to allege First Financial's knowing perpetration of two predicate acts; (2) dismissal of the § 1962(a) claim for failure to allege predicate acts in which First Financial participated as a principal; (3) dismissal of the § 1962(d) claim for failure to allege First Financial's agreement with any co-conspirator to commit two or more predicate acts; and (4) alternatively, the dismissal of all RICO claims for failure to allege a RICO enterprise. We treat mover's attacks on the § 1962(a), (b), and (c) claims under one rubric, as they raise similar questions about vicarious liability under civil RICO.

### THE SECTION 1962(a), (b), AND (c) CLAIMS AND RESPONDEAT SUPERIOR:

Subsection (a) of 18 U.S.C. § 1962 provides in pertinent part:

It shall be unlawful for any person who has received any income derived, directly

or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

■ This section has been construed persuasively by the Seventh Circuit in *Haroco v. American Nat'l. Bk. & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984):

As we parse subsection (a), a "person" (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity *in which the person has participated as a principal* within the meaning of 18 U.S.C. § 2 and if the person uses the income in the establishment or operation of an enterprise *affecting commerce. Id.* at 402 (emphasis added).

Thus, § 1962(a) requires a RICO plaintiff to plead and prove that the defendant is liable as a principal within the meaning of 18 U.S.C. § 2 for the underlying predicate acts. A corporation that is only the passive instrumentality of an employee's wrongdoing cannot be held liable as a principal.

The Fifth Circuit has recently elucidated the "principal" standard for mail fraud in a RICO context.

To establish that [defendant] violated the mail fraud statute as an aider and abetter [plaintiff] must have proved that [defendant] was associated with the mailing of the bogus invoices, participated in it as something that he wished to bring about, and sought by his actions to make it succeed.... To prove a [defendant's] association with the mailing of the false invoices, there must be evidence that [defendant] share in the criminal intent of the principals.... Proof of "mere negative acquiescence" in the fraud is insufficient ...; there must be evidence that

[defendant] "committed an overt act designed to aid in the success of the venture." *Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 485 (5th Cir.1986) (citations omitted) (reversing RICO judgment against defendant predicated on aider and abetter status).

We are of course aware that *Armco* turned upon the insufficiency of evidence after trial; it nevertheless provides guidance at the pleading stage, as the RICO complaint must not depend upon mere conclusory allegations, but must allege, among other things, fraud (including mail and wire fraud) with specificity. Fed.R.Civ.P. 9(b); *Davis v. A.G. Edward & Sons, Inc.*, 687 F.Supp. 266, 268 (W.D.La.1988); RICO standing order, May 24, 1988, R.D. 20 (88–1682) at 1 ("the statement shall include the facts plaintiffs rely upon to initiate this RICO complaint as a result of the "reasonable inquiry" required by Fed.R.Civ.P. 11"); at 2, ¶ 5 (b & c).

We are therefore unable to accept plaintiff's argument that under § 1962(a), it is sufficient to plead and prove that defendant First Financial has done nothing more than receive income from allegedly fraudulent loans; the texts of both § 1962(a) and Fed.R.Civ.P. 9(b) would require that First Financial *also* have "participated as a principal" in the pattern of racketeering activity.

The only two predicate acts in which First Financial is named as a "direct participant" fall short of this standard. In predicate act number 5, there is no allegation of First Financial's complicity with Kevin Dewitt in the complained of mailing; similarly, in predicate act number 11, there is no allegation of First Financial's participation, encouragement, or even awareness of the complained of mailing by its employee Robert Farmigoni. The averments, in short, set forth no facts or circumstances sufficient to identify First Financial as a "principal" for the two predicate acts, and the claim under § 1962(a) must accordingly be dismissed.

We now turn to the claim under 18 U.S.C. § 1962(c) which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

■ Most cases construing subsection (c) turn on whether the "enterprise" is the same entity as the RICO "person," as considerable agreement has emerged in support of the proposition that under subsection (c), the two must be distinct. *See, e.g., Babst v. Morgan Keegan and Co.*, 687 F.Supp. 255, 259 (E.D.La.1988) and authorities cited therein. So sacrosanct has this rule become that it has acquired a corollary, *viz.*, that the doctrine of *respondeat superior* does not apply to causes of action arising under § 1962(c). To permit such a strategem has been viewed as a devious circumvention of Congress' abundantly clear intention that § 1962(c) precludes identity of the "enterprise" and the "person." *See, e.g., Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 32–34 (1st Cir.1986). That is to say that under § 1962(c), a civil RICO plaintiff cannot hold a company vicariously liable for the racketeering activity of its employee where the employee is the RICO "person" and the company—his employer—is the RICO "enterprise" whose affairs are wrongfully conducted by the employee through the pattern of racketeering activity.

However, plaintiff FNBL maintains that these rules do not apply to the facts at hand: "In the case *sub judice* ... the separateness requirement does not present a problem because First Financial is *not* the enterprise under § 1962(c)." FNBL Memorandum in Opposition to Motion to Dismiss, R.D. 64 (88–1682) at 13. The court is hard pressed to recall, in this or any other litigation, a more egregious misrepresentation on a pivotal issue. Plaintiff's revised RICO case statement asserts: "The enterprises involved in the alleged violations of 18 U.S.C. § 1962(c) are ... [among others] FFLSLA [First Financial]" R.D. 47 (88–1682) at 36. As the case statement also names First Financial as the defendant or RICO "person," *id.* at 11, this identity of "enterprise" and "person" is alone reason enough to dismiss the § 1962(c) claim as to First Financial, without reaching the *respondeat superior* issue.

■ Nevertheless, even if we accept plaintiff's theory that First Financial is *not* an "enterprise" for the § 1962(c) claim, we are still persuaded that the claim must be dismissed, for we hold that *respondeat superior* can *never* be the basis of liability for a civil RICO suit. This holding constitutes an alternative reason for dismissing the § 1962(a) and (c) claims, and it is sufficient reason for dismissing the § 1962(b) claim.

■ The premise of *respondeat superior* is that one who is without fault may be held vicariously liable for the wrongdoing of another. *Schofield v. First Commodity Corp. of Boston, supra*, 793 F.2d at 32. The modern economic and legal rationale for this mode of vicarious liability is that an employer is in a better position to internalize and absorb the costs of the liabilities incurred by his employees as a cost of doing business; or to insure against such liabilities, and to shift these costs to the public. *See, e.g.*, Comment, "Civil RICO and Vicarious Liability" 65 B.U.L. Rev. 561, 599 (1985).

This rationale is ill-matched with the purposes and structure of civil RICO. The primary purposes of RICO are "to reach those who ultimately profit from racketeering, not those who are victimized by it," *Haroco, supra*, 747 F.2d at 402, and to strike "a mortal blow against the property interests of organized crime." *Bennett v. Berg*, 685 F.2d 1053, 1059 (8th Cir.1981) (*quoting* 116 Cong.Rec. 602 (1970)) (statement of Senator Hruska). Accordingly, RICO must provide a means of holding a perpetrator corporation liable without subjecting the victim or "passive instrument" corporation to treble damages; it is necessary to distinguish between a corporation that actively violates the statute and a corporation whose disloyal employee violates the statute without his employer's complici-

ty or knowledge. *Haroco, supra*, 747 F.2d at 401; *Parnes v. Heinold Commodities*, 548 F.Supp. 20, 23 (N.D.Ill.1982); Comment, "Vicarious Liability," *supra*, 65 B.U. L.Rev. at 598.

In particular, the text of the statute appears to require that corporate responsibility (like that of any other RICO defendant) must be evaluated at two levels, *viz.*, the level of the predicate acts *and* the level of the RICO violation itself. With respect to the former, a plaintiff filing a civil RICO suit must "plead facts that would give rise to [the corporate defendant's] *criminal* liability" for the predicate acts. *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F.Supp. 1391, 1396 (S.D.N.Y.1986) (original emphasis). With respect to the latter, the civil RICO plaintiff must plead that the defendant corporation invested in, acquired, or participated in an enterprise through the pattern of racketeering activity. 18 U.S.C. § 1962(a), (b) and (c); Comment "Vicarious Liability," *supra*, 65 B.U. L.Rev. at 596; at 604.

The complaint at hand cannot withstand Rule 12(b)(6) scrutiny in light of these principles. Even aside from the RICO cases statement's tellingly candid assertion that First Financial's wrongdoing consists in part of vicarious responsibility for the acts of Farmigoni, R.D. 47 (88–1682) at 11–12, that part of the case statement setting forth the predicate acts alleged to have been committed by First Financial do not actually recite facts that, if proved, would constitute a crime on First Financial's part. As to predicate act number 5, it is sheer effrontery to suggest that First Financial should be held criminally responsible for the act of Kevin Dewitt, *plaintiff's* employee, in his mailing of a December 21, 1985 letter to Farmigoni; according to this recitation, First Financial was the *victim* of Dewitt's fraudulent misrepresentation that FNBL's commitment letter for the Odyssey II project had been extended, when in fact it had not. (If First Financial can be held criminally responsible for this act, might not plaintiff FNBL *a fortiori* be held criminally responsible, too?) As to predicate act number 11, the circumstances constituting

First Financial's alleged fraud in mailing the Lapalco project commitment letter are not mentioned, let alone "stated with particularity," Fed.R.Civ.P. 9(b), nor is First Financial's fraudulent intent even "averred generally." *Id.* No other predicate acts on First Financial's part are alleged, and we refuse to hold, as plaintiff implies we should, that First Financial may also be held responsible for predicate act 12, or any other crimes alleged to have been committed by Farmigoni.

Indeed, when read as a whole, the pleadings and RICO Case Statement portray First Financial not as "perpetrator" or "aggressor" corporation, but rather the "passive instrument" or even "victim" of a "disloyal employee [who] violates the statute." *See, Haroco, supra*, 747 F.2d at 401; *Dakis v. Chapman*, 574 F.Supp. 757, 760 (N.D. Cal.1983) ("At most, plaintiff's allegations portray the firms as essentially legitimate businesses which permitted themselves to act as the 'conduits' for Chapman's securities violations.... These allegations may sufficiently state a claim under the securities laws.... However, it is clear to us that RICO was intended to address a different malady") *Parnes, supra*, 548 F.Supp. at 23–24; Comment, "Vicarious Liability," *supra*, 65 B.U.L.Rev. at 598–605.

We are deeply unpersuaded by plaintiff's string citations purportedly establishing that the Fifth Circuit "has routinely sanctioned RICO claims against corporations, partnerships, and other employers for the RICO violations of their agents." Plaintiff's Memo at 11. None of those cases reach the issue of *respondeat superior*, and most dealt instead with the appropriateness of dismissal of a RICO action on other grounds, *e.g.*, because a pattern of racketeering did not exist, because the RICO claim was time-barred, or because there had been no "racketeering injury."

It thus appears that plaintiff has failed to state claims against First Financial cognizable under 18 U.S.C. § 1962(a), (b) or (c), and these claims must accordingly be dismissed under Fed.R.Civ.P. 12(b)(6).

THE § 1962(d) CLAIM:

First Financial seeks dismissal of plaintiff's § 1962(d) RICO conspiracy claim because the plaintiff has failed to allege that First Financial agreed with any co-conspirators to the commission of two or more predicate acts. *See, e.g., United States v. Elliott,* 571 F.2d 880 (5th Cir.), *cert. denied sub nom. Hawkins v. United States,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).

█ Plaintiff sheepishly responds to this argument in a footnote which declares that the § 1962(d) claim "is held in abeyance at this time," subject to further discovery. Plaintiff's Memo at 8 n. 9. No authority is adduced by plaintiff to allow this amusingly fanciful "King's X" strategem. Indeed, the complaint and RICO Case Statement contain no allegations that First Financial agreed, with co-conspirators or with anyone else, to the commission of two predicate acts; *United States v. Elliott* therefore requires that the § 1962(d) claim be dismissed.

EXISTENCE OF AN ENTERPRISE:

█ First Financial alternatively argues that all RICO claims must be dismissed because no enterprise has been alleged. We reject this contention, as the RICO Case Statement identifies, among other enterprises, an association in fact enterprise of Dewitt, Loretta Lustig, and Farmigoni, as well as plaintiff FNBL itself for the § 1962(c) claim. We regard these allegations as sufficient to state a RICO "enterprise" for present purposes.

Accordingly, the foregoing considered,

IT IS ORDERED that Count XXXI of the complaint herein, insofar as it asserts against defendant First Financial causes of action arising under 18 U.S.C. § 1962(a), (b), (c) and (d), should be and the same is hereby, DISMISSED.